AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

A Samsung Galaxy Tablet and an iPhone 14 Pro seized from person of ANKIT KUMAR JHA pursuant to a warrant

Case No. 5:24cm15

FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
Feb 15, 2024
OFFICE OF THE CLERK

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the __Western__ District of __Arkansas__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 1030 | Computer Fraud |
| 18 USC 1343 | Wire Fraud |

The application is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of ___ days *(give exact ending date if more than 30 days: ___ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

HSI SA DYLAN CRITTEN
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__telephone__ *(specify reliable electronic means)*.

Date: 2/15/2024

*Judge's signature*

City and state: Fayetteville, Arkansas

Hon. Christy D. Comstock, Magistrate Judge
*Printed name and title*

# ATTACHMENT A

ELECTRONIC DEVICES TO BE SEARCHED

Electronic devices (**"Subject Devices"**) were seized from person of ANKIT KUMAR JHA pursuant to seizure warrant Northern District of Georgia #1:23-mc-01168.  They were shipped from HSI Atlanta Hartsfield International Airport to HSI Fayetteville, Arkansas where they are currently maintained in evidence at 3419 N Plainview, Fayetteville, Arkansas 72703.

Samsung Galaxy Tablet
Unknown Serial Number

iPhone14 Pro
Unknown Serial Number

## ATTACHMENT B

DESCRIPTION OF ITEMS TO BE SEIZED

For the Devices listed and described in Attachment A, the following items, that constitute evidence of the commission of, contraband, the fruits of crime, or instrumentalities of violations of [18 U.S.C. § 1030 (fraud and related activity with computers), 18 U.S.C. § 371 (conspiracy), 18 U.S.C.§ 1341 (mail fraud), 18 U.S.C.§ 1343 (wire fraud), and 18 U.S.C. §§ 1956(h) and 1956(a)(1)(B)(i) (conspiracy to commit money laundering and money laundering) **(hereinafter "Subject Offenses")**:

1. Any and all information, notes, software, documents, records, or correspondence, in any format and medium, pertaining to violations of **Subject Offenses**:

2. Any and all address books, names, and lists of names and addresses of individuals who may have been contacted by use of the Devices or by other means for the purpose of committing violations of **Subject Offenses**.

3. Any and all information, records, documents, invoices and materials, in any format or medium, that concern any accounts with an Internet Service Provider pertaining to violations of **Subject Offenses**.

4. Any and all information, records, documents, invoices and materials, in any format or medium, that concern e-mail accounts, online storage, or other remote computer storage pertaining to violations of **Subject Offenses**.

5. Records of Internet activity, including Internet Protocol addresses, firewall logs, transactions with Internet hosting providers, co-located computer systems, cloud computing services, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses pertaining to violations of **Subject Offenses** or that show who used, owned, possessed, or controlled the Devices.

6. Any and all information, documents, records, photos, videos, or correspondence, in any format or medium, pertaining to use or ownership of the Devices, or that aid in the identification of persons involved in violations of **Subject Offenses**.

7. Credit card information, bills, and payment records pertaining to violations of **Subject Offenses**.

8. Information about usernames or any online accounts or email addresses

9. Descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to violations of **Subject Offenses**.

10. Evidence of who used, owned, or controlled the Devices to commit or facilitate the commission of the crimes described, or at the time the things described in this warrant were

created, edited, or deleted, including photographs, videos, logs, call logs, phonebooks, address books, contacts, IP addresses, registry entries, configuration files, saved usernames and passwords, documents, calendars, browsing history, search terms, metadata, user profiles, e-mail, e-mail contacts, messages (text or voice), instant messaging logs, file structure and correspondence.

11. Evidence of software that may allow others to control the Devices, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security provisions or software designed to detect malicious software or unauthorized use of the device, and evidence of the lack of such malicious software.

12. Evidence of the attachment to the Devices of other storage devices or similar containers for electronic evidence.

13. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Devices.

14. Evidence of how and when the Devices were used or accessed to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

15. The telephone number, ESN number, serial number, and/or SIM card numbers of or contained in the Devices.

16. Passwords, encryption keys, and other access devices that may be necessary to access the Devices.

17. Contextual information necessary to understand the evidence described in this attachment.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ELECTRONIC DEVICES DESCRIBED IN ATTACHMENT A | : **UNDER SEAL**<br>:<br>:<br>: **AFFIDAVIT**<br>: |

I, Dylan Critten, a Special Agent with Homeland Security Investigations (HSI), being duly sworn, hereby depose and state as follows:

1. I am a Special Agent with the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) and have been since December 1, 2009. In my experience in federal law enforcement, I have participated in and conducted numerous complex criminal investigations including investigations of India-based call centers engaged in various telephone and mail extortion schemes. I received extensive instruction and training at the Federal Law Enforcement Training Center (FLETC) relating to general investigative techniques, electronic surveillance, rules of evidence and legal principles and statutes pertaining to criminal violations of federal law, including but not limited to, U.S. customs and immigration offenses, money laundering, currency violations, wire fraud, mail fraud, conspiracy and document and benefit fraud.

2. By virtue of my employment as a Special Agent, the federal crimes I am assigned to investigate include, but are not limited to, violations of 18 U.S.C. §§ 371 and 1349 (conspiracy), 18 U.S.C. § 1001 (false statements), 18 U.S.C. § 1028 (identity theft), 18 U.S.C. § 1028A (aggravated identity theft), 18 U.S.C. § 1341 (mail fraud), 18 U.S.C.§ 1343 (wire fraud), 18 U.S.C. § 1344 (bank fraud), and 18 U.S.C. § 1956 (money laundering). As a Special Agent I am personally familiar with and have used all normal methods of investigation, including, but not limited to,

visual surveillance, electronic surveillance, informant and witness interviews, interrogation, and undercover operations. I have performed various tasks, which include, but are not limited to: functioning as a surveillance agent; participating in the tracing of monies and assets obtained by illicit activities within the United States and abroad; interviewing witnesses, cooperating individuals and informants; functioning as a case agent; authoring and executing Federal search warrants for evidence of crimes against the United States; and participation in the arrests of numerous individuals for violations of the United States Code.

3. I make this affidavit in support of an application, pursuant to Rule 41 of the Federal Rules of Criminal Procedure, for a warrant to search electronic devices **"Subject Devices"** which were located in the direct possession or checked luggage of **ANKIT KUMAR JHA ("JHA")** at the time of HSI seizure.

4. Because this affidavit is submitted for the limited purpose of securing a search warrant for **JHA**'s electronic devices (collectively the "**Subject Devices**"), I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to search **Subject Devices** for the purpose of seizing evidence of the following **Subject Offenses:** 18 U.S.C. § 1030 (fraud and related activity with computers), 18 U.S.C. § 371 (conspiracy), 18 U.S.C.§ 1341 (mail fraud), 18 U.S.C.§ 1343 (wire fraud), and 18 U.S.C. §§ 1956(h) and 1956(a)(1)(B)(i) (conspiracy to commit money laundering and money laundering).

Furthermore, the statements in this Affidavit are based, in part, on my investigation of this matter and on information provided to me by other law enforcement agents. Where statements of others are set forth in this Affidavit, they are set forth in substance and in part. The events described in this Affidavit occurred on or about the dates provided below.

5.      As a result of the investigation, as explained in detail below, there is probable cause to believe that evidence, contraband, fruits, and instrumentalities of violations of the conspiracy will be found in the **Subject Devices**.

## Background

6.      Your affiant is part of a multi-agency team investigating criminal India-based call centers and domestic money laundering networks primarily targeting the elderly with government, banking, and tech company impersonation schemes.  In a typical scheme elderly victims are contacted by email/phone and coerced into believing that they are under investigation by "Agents" of the FBI, SSA, DHS, DEA, FTC, or U.S. Treasury.  Often the victims are told that their arrest and/or deportation from the United States had been ordered by law enforcement and is imminent, and the only way to avoid arrest is to pay the "Government" large sums of money as instructed.

7.      Other victims are targeted in tech support refund scams[1] in which victims believe they are receiving technical support from prominent U.S. tech companies and/or their banking institution after their computers have been compromised by "hackers."  Many

---

[1] Tech support refund scams occur when a scammer obtains remote access to a victim's computer, instructs victim to login to their online banking account, and then brings up some version of a refund form.  The victim is instructed that they are receiving a refund for services not provided.  The victim is instructed to type in the amount of the refund on the non-reversable form.  As they finish typing the scammer adds zeroes to the number to make it appear to the victim that the victim was refunded a large amount of money.  The scammers convince the victim that they are at fault for the error. The scammer instructs the victim that they will lose their job for refunding too much money to the "customer."  As they are building this story up the scammer quickly edits the html code on the victim's online banking account webpage which falsely makes it appear to the victim that they received a large refund into their bank account.  The victim is convinced that they received too much money back in error and is instructed by the scammers to wire funds or send cashier's checks to various third-party accounts which are received by networks of U.S.-based money laundering runners.

times victims are informed by callers that their identities were used to purchase "child pornography."

8. These schemes often engage elderly victims with daily long-duration calls in which the scammers attempt to physically and mentally exhaust victims. Scammers, having remote access to victim computers, employ elaborate fake scans and other measures in order to convince victims that their life's savings needs to be moved in order to protect their bank accounts from "Hackers."

9. India-based callers direct victims to withdraw cash (U.S. Currency), purchase cashier's checks, and/or send domestic/international wires. Victims sending cash and/or cashier's checks are instructed in detail on how to prepare the shipment to an alleged government official and/or corporate/banking representative via Federal Express (FedEx) or United Parcel Service (UPS), both interstate commercial carriers. The victims report that they believed they were speaking to legitimate U.S. Government officials or corporate employees and that paying the fees or returning funds believed to have been received in error would alleviate their alleged criminal liability.

**Probable Cause**

10. According to U.S. Customs and Border Patrol records, on or about 2/26/2018, **JHA** arrived in the United States on a J1 visitor visa. According to Western Union records, on 5/14/2018, U.S. Army Veteran J.V. (Sonora, California / aged 80+) wired $1,700 in funds to **JHA** who received the funds in Englewood, Colorado. J.V. later reported that he was the victim of an FTC imposter scam. **JHA** departed the United States, in July 2018, soon after receiving these funds.

11. On April 21, 2023, your affiant and other agents interviewed victim N.N. of

Denver, Colorado who was suffering from substantial memory loss and was in the process of moving to another state to be in the direct care of relatives. Agents also interviewed the son of N.N., reviewed banking documents, phone logs/messages, and other digital evidence. In January 2023, N.N. responded to a notification that a Best Buy "Geek Squad" technical support subscription was expiring, and there would be charges of $250 in order to renew. After calling the listed customer service toll free number, N.N. was directed to "MARK PHILLIPS" with telephone 415-492-7398. TextNow records for 415-492-7398 indicated it was registered on 1/10/2023 using an IP address in or around Kolkata, India.

12.     According to N.N.'s phone, during a chat conversation with 415-492-7398, occurring January 19, 2023 to January 26, 2023, "MARK PHILLIPS" provided QR codes to N.N. and instructions to send cash through a bitcoin ATM. N.N. remembered sending approximately $22,000 in cash through a bitcoin ATM. Your affiant identified approximately $70,000 in funds that appear to have been transmitted in various ways from N.N. to the scammers under the direction of "MARK PHILLIPS." This included a cashier's check from N.N. for $23,000 which was made payable to "ANKIT KUMAR **JHA**" and deposited into **JHA**'s Chase Bank account. N.N. provided your affiant a photo of a shipping receipt, dated 1/24/2023, with a next day tracking number for the shipment of cashier's check to **JHA**'s known Austin, Texas address. This address is an apartment believed to be shared with at least one other conspirator receiving high dollar deposits sourced from multiple tech support scam victims.

13.     TextNow VoIP phone number 801-876-8280 also communicated with N.N. during the scam as well as another victim K.R. Your affiant spoke with K.R. and spouse (Portland, Oregon) who had reported losses of approximately $50,000 to their local police after they had transmitted funds to tech support scammers. K.R. and spouse were also physically mugged and

robbed while they were in the process of transmitting funds via a bitcoin ATM they had been directed to from callers at telephone 801-876-8280. According to TextNow records, telephone 801-876-8280 was registered on 1/19/2023 from an IP address in or around New Delhi, India.

14. According to Chase Bank records, **JHA** also deposited a cashier's check in the amount of $7,050 from elderly person O.D. (Royal Palm Beach, FL). On July 12, 2023, HSI agents in Royal Palm Beach, FL were able to locate and interview O.D. with your affiant on speaker phone. O.D. was the victim of a PayPal refund scam in which callers falsely convinced her that $8,000 had been refunded to her and that she needed to return the funds via check. O.D. was targeted while she was recovering from surgery and under the influence of multiple prescription medications. Callers who conducted the PayPal refund scam of O.D. also remotely accessed her computer and used it without O.D.'s authorization to set up multiple accounts, including Skype/Microsoft accounts, which were used to further the scheme. Callers with remote access to O.D.'s computer also attempted to send $10,000 in funds through Zelle using O.D.'s Wells Fargo online banking account.

15. According to wire records, in November 2022, **JHA** transmitted four wires totaling more than $8,900 to SHUBCHANDRA ROY in Kolkata, India. According to HSI records, on or about 2/7/2017, SHUBHCHANDRA ROY was arrested for Grand Larceny by agents from HSI and the New York District Attorney's Office after receiving $20,000 from a victim of an India-based phone scam. On or about 4/13/2017, ROY fled the United States to India before facing charges.

16. According to Fedex records and Walgreens surveillance images, on or about 4/4/2023, **JHA** picked up a domestic Fedex shipment using the false identity "MARK SPENCER." Fedex records reveal that this shipment was originally routed to **JHA's** address before being

9

diverted to a Walgreens store for pickup. According to Fedex records this parcel was tracked more than 150 times by a T-Mobile digital device user in Austin, Texas (believed to be **JHA**), a T-Mobile digital device user in San Antonio, Texas, and many India-based IP addresses. This activity is consistent with parcels in this scheme which are meticulously tracked by United States and India-based conspirators working in conjunction with one another. Your affiant reviewed immigration photo indexes and social media postings by **JHA** which were a match to the identity of Walgreens surveillance images showing **JHA** picking up the "MARK SPENCER" parcel. Your affiant's review of these surveillance images also identified a phone in **JHA**'s hand, with a grey case. This phone/case appears very similar to the iPhone14 identified as one of the **Subject Devices**.

17. As evidenced by **JHA**'s possession of a smartphone during the Walgreens transaction, smartphone tracking of a Fedex parcel, and the conspirators location in India, this scheme relies upon constant communication between runners in the United States who provide addresses, bank accounts, and photos for false identity documents to conspirators in India. India based conspirators are also transmitting real-time information on parcels and pickup locations as well as directing runners where to re-direct the funds from the scheme. The digital communications underlying this scheme rely on many layers including email, WhatsApp, cloud services, financial applications, and other digital messaging services which are likely to be found on **Subject Devices**.

18. **JHA** is a J-1 non-immigrant exchange visitor who departed from Atlanta Hartsfield International Airport on or about June 27, 2023, destined for India with transit through France. **On June 26, 2023, a seizure warrant application/affidavit (Northern District of Georgia #1:23-mc-01168) was submitted to, and said warrant was issued by, a United States**

**Magistrate Judge in the Northern District of Georgia.** On June 27, 2023, this seizure warrant was executed. **Subject Devices** were seized, placed off network (i.e. airplane mode), and shipped to HSI Fayetteville, Arkansas. Your affiant seeks this warrant now authorizing a forensic examiner to search **Subject Devices** for evidence, fruits, and instrumentalities of the **Subject Offenses** which are currently located at the HSI office (3419 N Plainview Ave., Fayetteville, Arkansas 72703) in the Western District of Arkansas.

19. As a result of the information set forth above, there is probable cause to believe that the **Subject Device(s)** likely tracked victim packages, received funds using financial applications, and communicated with known and unknown conspirators for the purpose of money laundering of victim funds.

### Technical Terms Relating to Subject Devices

20. Based on my training, experience, and research, I know that the **Subject Devices** have capabilities that allow them to serve as some or all of the following devices: a wireless telephone, digital camera, portable media player, GPS navigation device, and/or PDA. In my training and experience, examining data stored on devices such as the **Subject Devices** can uncover, among other things, evidence that reveals or suggests who possessed or used the device, and evidence, fruits, and instrumentalities of violations of the **Subject Offenses**.

21. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. <u>Wireless telephone</u>: A wireless telephone (or mobile telephone, or cellular telephone, or cell phone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A

wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

        b.      <u>Digital camera</u>: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

        c.      <u>Portable media player</u>: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. <u>GPS</u>: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. <u>PDA</u>: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. <u>Tablet</u>: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, which is primarily operated by touching the screen. Tablets function as

13

wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "Wi-Fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

        g.        <u>IP Address</u>: An Internet Protocol address (or simply "IP address") is a unique numeric or alphanumeric address used by computers on the Internet. An IP address is typically a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

        h.        <u>Internet</u>: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

### **Electronic Storage and Forensic Analysis**

22.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This evidence can be maintained indefinitely when devices are placed off network (i.e. in Airplane Mode). This information can sometimes be recovered with forensics tools.

a. As further described in Attachment B, this application seeks permission to search **Target Devices** that may contain electronically stored information that might serve as direct evidence of the **Subject Offenses**. There is probable cause to believe that that evidence would be located on the **Target Devices**

b. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

c. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

d. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

e. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

f. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

## **CONCLUSION**

23. Based on the above information, there is probable cause to believe that the **Subject Devices** were used in connection with the **Subject Offenses** and that evidence, contraband, fruits, and instrumentalities of the **Subject Offenses** will be found in a search of **Subject Devices**.

24. Based upon the foregoing, I respectfully request that this Court issue a search warrant for the search **Subject Devices**, more particularly described, and depicted in Attachment A, in order to seize evidence articulated in Attachment B.

## **REQUEST FOR SEALING**

25. **Neither JHA** nor any of his conspirators have been arrested, and this investigation is ongoing and may lead to the identification of other individuals involved in the commission of the Specified Federal Offenses. The information contained on the **Subject Devices** may be relevant to other offenses and persons of interest located in and around Austin, Texas, New York, and India. Premature disclosure of this application and affidavit for a search warrant may compromise the investigation by, among other things, disclosing the precise matters being reviewed and the status of the investigation to date. Accordingly, it is respectfully requested that this application and affidavit for the search warrant be sealed until further Order of the Court, with the exceptions that: (i) a copy of the search warrant and property receipts that will be provided at the warrant's execution, and (ii) the Government may without further order of this Court disclose these materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

_____
Dylan Critten, HSI Special Agent

Special Agent Critten attested to this Affidavit by telephone pursuant to FRCP 4.1(b)(2)(A)

Attested to before me on the
15th day of February, 2024

_____
HONORABLE CHRISTY D COMSTOCK
UNITED STATES MAGISTRATE JUDGE

17